Good morning. I'm Kyle Hoffman for the United States. I would respectfully submit that the district court judge in this matter abused its discretion, the district court abused its discretion, and that the decision to grant a new trial should be reversed and the verdict should be reinstated. Now, I say that with a certain amount of trepidation, recognizing that Judge Block is a district court judge and that Judge Pius has been on the trial court level. And it's usually the case that the government is arguing that district courts should be- Judge Farris was also a trial court judge. No, no, no. You're right. I was not. But I've been on appellate court since before you were born, so I've reviewed a lot of trials. I understand. But I appreciate the fact that you recognize that I'm the only experienced jurist on this panel. Well, having- Well, you've won something, so you just, yes. I do say it with a certain amount of trepidation, but I also say it with conviction. And I think the easiest way to see that there was an abuse of discretion here is by process of elimination. There are really only two broad ways that a new trial motion should have been granted under the circumstances here. One is if there was presumptive or inherent prejudice from the marshal's comments, the admonition, you're not allowed to speak to anyone, to the defendant. And the other way is if the defendant had shown actual prejudice. Let's start with the presumptive and inherent prejudice. The defendant, Mr. Cervantes' counsel argues essentially that this case should be understood as an improper contact with a juror kind of case. And he uses the Rutherford case, that's the IRS glaring at the jurors. He uses the Simtop case, that's the defendant eyeballing the jurors. And the Caliendo case, which is where a witness essentially ingratiated himself with some jurors in an out-of-court conversation. You want me to tell you one-third of the courts, just one-third, speaking for, who is in charge of proper demeanor in the courtroom when the judge is on the bench? Well, it ought to be the district court judge. And it is the district court judge. And in this case, there was somebody else who thought there was something he needed to do. Understood. Don't you think? Doesn't the record show that? Now, if the prisoner was about to escape, he would have been called into action even if the judge had been sitting there. Maybe. But the judge was there. This wasn't a situation where the judge was not in the courtroom. She was talking on the sidebar. Right. But she was present in the courtroom. Correct. And demeanor was up to her, isn't it? Yes, it was. It was up to the... Yes and no. See, well, we've got marshals in here now. And let's assume the marshal didn't like the way you approached that bench. He didn't like the way you had your hands on both sides. Would the marshal tell you, take your hands down, counsel, if we're sitting here? Well, Your Honor, I would suggest that... Do you see what I see as a problem with your position? I understand, I believe, the importance of the court's question. All right. I hope. But here's what I would point to. One, as Your Honor has recognized, the court was otherwise occupied. And if you look at the actual back and forth at the sidebar, there was a little bit of confusion. What's going on in the back of the courtroom? The court was... And they just moved on after they sort of minimally sorted that out. The second point I would raise is the district court judge did have some comments about, well, there could have been other alternatives and so on. But she very clearly recognized that it was a security issue. And she says that. I believe that's on page 256 of the excerpts of record. She didn't really quarrel with the notion that there should be no contact between the defendant and family members while at the sidebar. She said there's a security issue. So that would be the response I would make. No, no. I follow what you're saying there. But what this record shows, he first signaled for him to stop talking. Correct. Then he gave the... I guess. I don't know what... That's a little unclear, but I understand. But he gave a signal that would be interpreted by everybody, stop talking. And the guy didn't. Correct. Now what this record may show is that he became quite impatient with a person who was ignoring his subtleties and decided to make it perfectly clear what he's to do. And that's why I think the court said, all right, I'm here. I could have solved it. Somebody could have brought it to my attention, even if I didn't see it, because I was off the side. But they didn't. He decided he had to solve it, and it wasn't his place to solve it, was it? Well, there are a couple of things I'd say about that. First, it's not clear to me that the marshal signaling the court would have been a less intrusive... No, no, no. The marshal wasn't signaling the court. He was signaling the guy who was talking. I understand, but I'm... No, no, no. He didn't have to signal him. He'd just come around to the side bar. Right. And say, knock it, you know, just... Well, I understand, but I think the alternative the court is proposing would have actually been more intrusive. But that isn't for me to propose an alternative, and I'm not suggesting that I am. I'm just suggesting why the trial court who was there, who saw it all, who sat through the whole thing, decided to grant the relief she granted, and now you want us to reverse. And on what... How do we do it when we see that the marshal was acting to bring about decorum in the courtroom at a time when the judge was on the bench? That's undeniably true. That's what the marshal did. And all I'm suggesting is, if you look at the cases, it's not presumptive prejudice because it's not an improper contact with the court. The court raised the specter of being in custody. And the reason why I think we can really recognize that that's what this is about is, that's what it was always about. I think that's what it's about. I think the record makes it clear that's what it's about. The only thing is, who had the responsibility at the time? And the marshal may have stepped further than he needed to go. Well, this is where I think I respectfully may disagree with the court, which is... You don't even have to do respectfully. You represent your client. Go ahead. It seems to me it needs to fit in one of the three boxes. It needs to fit into, is it presumptive prejudice? I think we eliminate that because it's not the improper contact, the jury tampering kind of case. It's always about custody. Custody cannot be by itself inherently prejudicial. Here's the bottom line I would say about that. If Justice Marshall in the Illinois Allen case will write, under some circumstances, a defendant can be bound and gagged in a courtroom, custody by itself can't be inherently prejudicial. Let me try to earn my keep here a little bit, okay? You cite a lot of cases. Do you have any cases where a trial judge actually did make a determination like this that was overruled by a circuit court? If the government had been aware of it, we would have cited it to the court and obviously would not. All the cases are the obverse, where the defendant is claiming that there's been prejudice, etc. But it seems like it's a different cup of tea. And it ultimately reduces itself, I think, to whether or not we're going to defer to the trial judge who was right there on the spot, observed the demeanor, knew what was going on. And in this case, the trial judge, it seems, did not have a knee-jerk reaction. She initially denied it, and then there were other circumstances. Does this really call out for just allowing ourselves, of course, as a district court judge, to say the district court judge should really make that call? Unless there's something horrendous that's happened. I don't know any case at all that overrules a district court judge in this context. There is no case that compels the result the government is urging, no question about it. But what I'm trying to suggest in terms of the structure of my argument is, if the question is, did the district court abuse its discretion, and if there are only essentially three boxes, presumptive prejudice, inherent prejudice, or a showing of actual prejudice, and none of those are met, then there can be no basis for the decision. You have at least one of the juror, though this happened after the event, that did put down in black or white that she was prejudiced, that it was a fact, that it was considered in the jury room, the subject was brought up. What more do you need? Well, there's the rub. That's where we get into the Federal Rule of Evidence 606B. But this is not contrary to 606B, which is designed for a different purpose, not to impose upon the deliberative process, right? Right. But that's where I think where we get to is, the government submits, it wasn't improper necessarily, this I think otherwise incompetent evidence about the jurors, for the court to be made aware that somebody heard the comments and that the issue of custody was brought up, where we part company is the notion that, yes, I would say that affected our verdict. We would strongly suggest that is impermissible under 606B. That's the problem. And then once you get there, once you say that can't be considered, you're left with custody, which is not inherently prejudicial. That simple statement in the declaration by the juror just goes to show that when the court heard it again, what she then saw was something that had, you know, it was a significant event in the courtroom. She did say that. She did seem to suggest that. Actually, it was a bigger deal than she had thought. I don't quarrel with that. And that's what led her ultimately, I think, to conclude, look, we just better do this over and do it right. And she said under those circumstances, I'm granting the motion for a new trial. It seems to me, you know, we say all the time the district court judges have wide discretion, and only when they go beyond, and, you know, that Judge Block here kind of hit it on the head. I would just suggest that if you use the kind of process of elimination structure of argument that I've urged upon the court, you're really left with nothing that the court could have relied on to come to this decision, and that's an abuse of discretion. That's the structure of my argument. If it's not persuasive, then I'm, we're having a re-do. We've had a nice trip to Los Angeles. Thank you. Do you understand the point he makes, basically? Yes, Your Honor. And there's no doubt that there are cases where not only does a, is a, every indication that a person is in custody, he's bound, sometimes he's in a separate sound booth, and the trial proceeds, and nobody can say, based on existing case law, that that was improper, that that was, that somehow that would have been prohibited. So his point is, if the whole thing has to do with that he was in custody, and that's what the jury was signaled, why, that happens all the time. This jury knows that he's in custody. So what do we do with that? Well, to use the government's example about... You better say who you are for the record. Tripp Johnson, the federal defenders, on behalf of Mr. Cervantes, for the record. But to get to the heart of the matter, with regards to it just being custody, there's no question that in particular cases, under particular facts, there are certain restraints that are required, even in a courtroom in the presence of a jury. However, as the Supreme Court has interpreted it, and this Court has interpreted that precedent, the district court or the trial court needs to make certain findings before, say, for instance, someone can be shackled or before someone can be bound and gagged, which I think was the Illinois v. Allen case. And while I disagree with the shackling cases as providing the best analysis for what occurred here, you still can use that analysis to see that it's not just custody, it's the means that were used to address the safety concern. So even assuming that there was a safety concern about Mr. Cervantes speaking quietly with his family members, the response, which was in this case the outburst by the marshal, was not commensurate with that. And the case law requires, if we're going to use the government's analysis, for the Court to consider the least restrictive means of dealing with the safety concern. So as Judge Ferris, you've already suggested, there may be other ways the Court could have dealt with this situation. There certainly, the marshal is beyond his prerogative in this case to do what he did when the person who's in charge, the district court judge, is the one who should have addressed. So in this case, the response was not commensurate with the safety concern. And moreover, this case is unique because the district court granted a new trial in the interest of justice. The district court's discretion is at its zenith when they grant a new trial. This court has held that rarely, if ever, would it reverse such a finding. And then only when the district court engaged in egregious abuse of discretion. The district court here, in the interest of justice, was present when the outburst occurred. The district court was present when the marshal gave his testimony about exactly what had transpired. And she also was aware, and this is one of the reasons why we have such an extremely deferential standard here, that she wasn't giving a judgment of acquittal. She was putting this back before a jury, where it should be a jury that hasn't been potentially prejudiced or even actually prejudiced by the marshal. Do you think she made a finding that he was prejudiced? Your Honor, I'll respond to that in two ways. First, I think with respect to the juror questionnaires, which is where I think that question leads us, she did say to the government at the time, what if I didn't rely on those? And I think in her answers, she's explaining why in the case when it occurred, that she didn't have to rely on those findings. But she does at another point say that based on those questionnaires, there was a concern. And the government itself has conceded that certain parts of the questionnaire were properly before the court. The fact that at least three jurors heard the comment, the fact that at least three jurors began to wonder if Mr. Cervantes was in custody, the fact that one juror did believe Mr. Cervantes is in custody. And then I guess the government parts ways with the comment of Juror John Mendoza, who says that it affected his decision-making ability. You know what else the judge could have been concerned about? The way she went about correcting it. She heard the outbursts. Counsel asked for something. And instead of saying what might have been said to the jury, they had some cutesy way of doing it so that we won't pinpoint what we're talking about here. And then when she, at the end, and I'm not trying to speculate on what, she could have thought, I could have handled this in a different way. I didn't. The guy's prejudiced. I've got to now go to a new trial. Because if the juror's not silly, they had, but did you hear a loud noise? Well, they didn't. It could have been handled a different way. Now, that could have also gone into the equation, I would guess, when she decided it better start over. I agree, Your Honor, that that is a factor that can be considered. She was being cautious, and she was aware of the jury's province to deliberate free of not only extraneous information from, say, the marshal in this case, but from the courts prying into their deliberative process as well. But that is within the bounds of her discretion, and it certainly wasn't egregious the way she handled it. I certainly objected to the form of question at the time that she was polling the jury. And I think that, in the end, the court agreed that, and even government counsel, at one point, agreed the question wasn't getting to what the question was. Maybe you can educate me, because I'm just curious about this custody issue, which seems to be the sine qua non of what we're talking about here, I suspect, right? It's all dealing with whether or not the jurors would tip off that this person might be in custody, I assume. But, you know, you have, in the real world, situations where somebody's on charge with a heinous crime, with murder. Everybody knows that that person is not at liberty. I mean, that's a fair presumption. So where do we cut the line? Are there such situations where it's certainly apparent that somebody's in custody, so that if a marshal says something like this to somebody who apparently would be considered to be in custody, even though we don't say this, we abide by the niceties of not telling the jury anything about custody, would it make a difference? Does it come to a point where the nature of the crime, perhaps, could make a difference in terms of whether we're just being a little bit more philosophical than real? Well, Your Honor, just to return to the point that on a case-by-case basis, the trial court has to decide what the appropriate form of dealing with the safety concern is. For instance But I would disagree that, say, the nature of the crime would give reason to have visible shackling in the courtroom. I'm not talking about shackling. I'm talking about this situation. Well, I think this situation Where the person was on charge, would be in charge of murder, and the same thing happened. Right. And I think that this situation is Would it be different then? I think that the problem with – I don't think that it would be different in the sense that the problem is this, is Mr. Cervantes testified in his own defense. It really was the crux of the entire case. As opposed to restraints, which are indicative, perhaps, of dangerousness, the marshal telling me he couldn't communicate with anyone I'm trying to pose a simple hypothetical. The same situation happened, whispering in the courtroom, et cetera, except the charge was not drugs. It was murder or some horrible, horrible crime. Would the case be different? I don't think it would. I think that the same result would obtain, at least in a case where credibility was at issue. Now, could the marshal have addressed Mr. Cervantes in a different way? Looking at this case, he chastised him in English. Mr. Cervantes was clearly using an interpreter as a Spanish-language speaker. I don't think we have to go that far. I don't think this Court has to go that far as to say in every instance where a marshal might admonish a defendant that this sort of relief is warranted. You're saying in this case, based upon the nature of the charge, it would not be clear as a practical matter whether this person was or was not in custody, I guess, right? Isn't that the touchstone of your analysis here? I'm not sure if I understand the Court's question. I think the nature of the charge is irrelevant to whether he's in custody, but the concern that the courts have said is that finding out that someone's in custody can either be a concern of dangerousness or untrustworthiness. And when they learn that he's in custody, I'm really focusing in this case on the potential that the jurors may perceive that he is being untrustworthy. And in a case where a defendant testifies, which is unrelated to the charge, then you do have this problem and you do have this prejudice that arises. And there are no cases within courtroom behavior where there's extraneous conduct that says that there has to be a showing of actual prejudice. So even under the government's analysis, these shackling in custody cases, the Court has found where there is a likelihood of prejudice, where there is a strong possibility of prejudice, that that's sufficient to warrant the relief.
judges: Farris, Paez, Block